UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PHYLLIS HARMON,

                            Plaintiff,

-vs-                                                    STATEMENT OF
                                                      UNDISPUTED FACTS

                                                      Civil Action No. 14cv6562

CITY OF ROCHESTER, ROCHESTER POLICE
DEPARTMENT, OFFICER BRIAN MARONE, OFFICER
REIDY.

                            Defendants.

---

1. Plaintiff filed her Complaint on or about September 26, 2014, alleging various allegations including, a poor pled excessive force claim and a Monell claim for negligent training and supervision. See Exhibit A.

2. Defendants timely responded and asserted various affirmative defenses. See Exhibit B.

3. Defendants provided Rule 26 disclosures on October 15, 2015 with all evidence and documentation in their possession enclosed therein. See Exhibit C.

4. Discovery is now concluded.

5. On July 14, 2013, Plaintiff was charged with Resisting Arrest and Obstruction of Governmental Administration in the Second Degree at 111 Atkinson Street in the City of Rochester, New York. See Rochester Police Department Police Incident Report, attached hereto as Exhibit D.

6. Plaintiff contracted with Ulysses Betnces to perform work on her home. During the relevant period, Plaintiff's home was deemed uninhabitable by the City of Rochester due to the presence of lead. See Rochester Police Department Supporting Deposition RPD 1270, attached as Exhibit E.

7. Signage was placed on the front of the home indicating that it was unsafe for public access. Plaintiff did receive her lead certification from the County of Monroe and hired Mr. Betnces to conduct the abatement. Exhibit D.

8. Plaintiff was very unhappy with the quality of Mr. Betnces work and accused him of causing her property to be both damaged and stolen during the course of his employment.

9. She, in fact, secured a judgment against him in small claims court. The matter was heard before Judge Teresa Johnson.

10. Plaintiff allowed me to review the City Court Judgment against Mr. Betnces but I was not allowed to duplicate those records. However, I fully reviewed the Decision and Order from Judge Johnson, which makes it clear that police were given access to the home by Mr. Betnces and did not illegally access the home.

11. Police were called to plaintiff's residence by Mr. Betnces, a general contractor, because plaintiff, who was unsatisfied with his work, and alleging he was responsible for stolen appliance and property damage, was preventing Mr. Betnces from accessing the home to acquire his tools and equipment. See Exhibits D and E.

12. When police arrived to Plaintiff's residence, Mr. Betnces presented them a work contract and a set of keys to Plaintiff's home, which were provided by Plaintiff in furtherance of his lead abatement contract. See Exhibits D and E.

13. As Officers remained on the front porch while Mr. Betnces collected his tools from within the home, Plaintiff attempted to stop him from retrieving the tools, tried to push past officers, and punched Officer Brian Marone in the chest. See Subject Resistance Reports of Officer Marone and Reidy, attached hereto as Exhibit F.

14. Ulysses Betnces provided a sworn deposition under the penalty of perjury, as follows:

"The police arrived and she came out of the home, did not cooperate, told the police only God could release the tools. [P]hyllis came back on the premise. An officer told her to hold up, she said nobody can tell me not to go into my house. The officer stepped in front of Phyllis, Phyllis then swung her fist at the officer." Exhibit E.

15. Officer Marone told Plaintiff she was under arrest and tried to grab her arm, at which point she pulled away. See Exhibit F.

16. Officer Marone deployed OC Spray to plaintiff's face, which successfully stabilized her movement, at which point he again unsuccessfully attempted to grab her arm to place her into custody. See Exhibits E and F.

17. She continued to struggle with Officer Marone and ignored verbal commands, at which point she was taken to the ground and both Officers Marone and Reidy were required to

take her into custody. See Exhibits E and F.

18. Use of OC spray is the second level of force permitted on the RPD's use of force matrix once verbal commands are being ignored and is considered a low level of force. See Exhibit G.

19. When she complained of asthma symptoms, she was taken by ambulance to Strong Hospital. See Exhibit H.

Dated: April 29, 2016

BRIAN F. CURRAN CORPORATION COUNSEL

/s/ Spencer L. Ash

BY: Spencer L. Ash, ESQ., of Counsel
Attorneys for Defendants City of Rochester
and City of Rochester Police Department
City Hall Room 400A, 30 Church Street
Rochester, New York 14614
(585) 428-6699

To: Phyllis Harmon
111 Atkinson Street
Rochester, New York 14608